**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 95-5807

AMEER ALI SHAKOOR,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 95-5843

BENANCIO CEPEDA,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Newport News.
Robert G. Doumar, Senior District Judge.
(CR-93-98)

Argued: September 23, 1996

Decided: July 17, 1997

Before WILKINS, Circuit Judge, BUTZNER, Senior Circuit Judge,
and MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Oldric Joseph LaBell, Jr., Newport News, Virginia, for Appellant Shakoor; Sa'ad El-Amin, EL-AMIN & CRAWFORD, Richmond, Virginia, for Appellant Cepeda. Robert Edward Bradenham, II, Assistant United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Norfolk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ameer Ali Shakoor and Benancio Cepeda were convicted of various cocaine trafficking offenses in the Eastern District of Virginia. Their original sentences were vacated for re-evaluation of the amount of cocaine and crack attributable to each appellant. See United States v. Cepeda, 94-5301 (4th Cir. May 2, 1995) (unpublished), together with United States v. Shakoor, 94-5302 (unpublished). On remand, the court resentenced the appellants after conducting an evidentiary hearing to determine the drug quantities.

Shakoor and Cepeda raise several issues on appeal. Shakoor challenges his initial firearm conviction in light of the Supreme Court's recent holding in Bailey v. United States, 116 S. Ct. 501 (1995). Cepeda appeals the amount of cocaine attributable to him on the grounds that the court considered unreliable evidence. We affirm both Shakoor's firearm conviction and Cepeda's sentence.

I

Shakoor and Cepeda headed a cocaine ring in the Newport News, Virginia, area. Cepeda, the leader of the ring, and Shakoor, his right-

hand man, supplied large quantities of both crack cocaine and powder cocaine to several distributors in the area. Undercover police agents eventually infiltrated the drug ring and arrested several of its members, including Shakoor and Cepeda, who were indicted on multiple drug trafficking charges.

Shakoor appeals his conviction of "using" or"carrying" a firearm in relation to a September 29 cocaine sale. He claims that the instructions to the jury were improper in light of the Supreme Court's recent holding in Bailey v. United States, 116 S. Ct. 501 (1995).

The district court properly instructed the jury about the elements of 18 U.S.C. § 924(c)(1) as follows:

> One, that the defendant Ameer Ali Shakoor committed the crime of distribution of crack cocaine as charged in the indictment.
>
> And, two, during and in relation to the commission of that crime the defendant knowingly used or carried a firearm.

See United States v. Mitchell, 104 F.3d 649, 652 (4th Cir. 1997) (referring to the elements of § 924(c)(1)). The district court, however, defined "use" according to prevailing case law of this circuit, which has subsequently been shown to be erroneous. See United States v. Bailey, 116 S. Ct. 501 (1995). The evidence is insufficient to convict Shakoor of using a gun within the meaning of Bailey.

With respect to "carry," the court instructed the jury that "evidence that a defendant had a gun with him or near him" could support a conviction of carrying a firearm in relation to the crime of distribution of crack. This definition has also subsequently been shown to be erroneous. See Mitchell, 104 F.3d at 653. Mitchell defines carry as "knowing possession and bearing, movement, conveyance, or transportation of the firearm in some manner." Id. Since the court's instruction did not comport with Mitchell's requirement that"carry" include an element of transportation, it was legally insufficient.

Since Shakoor did not object to the instructions at trial, we review for plain error under Fed. R. Crim. P. 52(b). Plain error analysis

3

requires a showing that the error affected the "substantial rights" of the defendant. United States v. Olano, 507 U.S. 725, 734 (1993). Whether an error affects "substantial rights" is analogous to harmless error review, and the Supreme Court recently stated that misinstructing the jury on an essential element of an offense is subject to harmless error review. United States v. Johnson, 117 S.Ct. 1544, 1550 (1997).

Because the evidence was sufficient to convict Shakoor of carrying a gun in violation of the statute, the instructional error with respect to the "carry" prong was harmless, and therefore did not affect Shakoor's substantial rights. Shakoor and Cepeda drove to Conwell Edlow's house in a car registered to Shakoor. Shakoor entered the house and sold crack to Edlow. Police observed Shakoor's car leave the street in front of the house, and they soon stopped it. A loaded gun, which Shakoor owned, was visible on the car's console. Shakoor and Cepeda had, in their pockets, approximately $1,700 in marked bills that Edlow had obtained from an undercover agent.

From these facts the inference is compelling that Shakoor carried, or transported, a gun in his car to facilitate the distribution of drugs. The evidence clearly showed that Shakoor was guilty of carrying a gun during and in relation to drug trafficking, as that term is defined by Mitchell, 104 F.3d at 652. We find that the error in insructing on the "carry" prong was not prejudicial, and thus did not affect Shakoor's substantial rights.

II

The government must prove facts relating to sentencing by a preponderance of the evidence. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). The judge is not bound by the Federal Rules of Evidence but may consider any relevant evidence that has "sufficient indicia of reliability to support its probable accuracy." USSG 6A1.3(a), p.s. (Nov. 1995). The findings of the district court may only be overturned if they are clearly erroneous. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990).

At the resentencing hearing, the court attributed 2.748 kilograms of crack to Cepeda. This quantity was based on information derived

4

from three witnesses--Edlow, Ryan Kemp, and Marlo Evans--who either purchased crack directly from Cepeda or knew Cepeda was the source of the crack. The quantities derived from Edlow (.1409 kilograms) and Kemp (1.393 kilograms) came from their debriefings with Officer Minkoff. The quantities involving Evans (1.215 kilograms) came partly from Evans' debriefing with Minkoff and partly from Evans' original trial testimony.

Cepeda argues that Evans and Edlow were unreliable sources of information. He cites several instances where Evans' or Edlow's trial testimony contradicted statements they made in their earlier debriefings with Minkoff. In one instance, Edlow contradicted himself about whether Cepeda sold him any heroin. The judge, however, refused to punish Cepeda for any heroin. On another occasion, Evans apparently lied about the whereabouts of a "crate" or"box" that he recovered which contained crack and powder cocaine allegedly belonging to Cepeda. The judge again refused to attribute any cocaine from the alleged "box" to Cepeda.

In his debriefing, Evans stated that Cepeda told him that Shakoor went to New York to purchase cocaine powder for Cepeda once or twice a week between June and September 1993. At trial, however, Evans testified that Cepeda never told him where the drugs were coming from.

The judge attributed over 15 kilograms of cocaine powder to Cepeda based upon evidence that Cepeda sent someone to New York at least once a week between June and September 1993 to purchase a kilogram of cocaine powder for the conspiracy. This finding was not clearly erroneous. Minkoff testified to Evans' statements in his debriefing that Shakoor made regular "runs" to New York for Cepeda. These statements were corroborated by Timothy Cash, a government witness. In the initial sentencing hearing, Minkoff testified that Cash told him that Cepeda had asked Cash to make "runs" to New York for him. When Cash declined, "that's when Sheik (Shakoor) came in."

The mere fact that Evans contradicted this evidence at trial does not prohibit the judge from relying on it. The judge is free to believe the debriefing testimony if the debriefing testimony is reliable. Cf. United States v. Uwaeme, 975 F.2d 1016, 1021 (4th Cir. 1992). We

5

find that Evans' debriefing, as corroborated by Cash, was reliable enough to support the judge's findings about the trips to New York.

We find no reason for reversal in the other assignments of error.

<u>AFFIRMED</u>

6